The opinion of the Court was delivered by
Withers, J.
The plaintiffs, in this action to try title, had the evidence of paramount paper title, The defendants undertook to show, that the plaintiffs had been divested, by the adverse possession, on the part of one William Brown, (from whom the defendants derived their claim of title,) of the locus in quo. Upon the evidence received and submitted to the jury, they have established, by their verdict, that William Brown acquired title to the land in dispute, by seven consecutive years of adverse possession, beginning as early as 1808. This result supersedes any question whether five years adverse possession would have been sufficient to divest Twining, (who was absent from the State,) by reason that his co-tenant, Breen, was in the State; that is to say, whether the right of action of any co-tenant of realty is preserved by the circumstance of the absence beyond seas, of one co-tenant, or of other recognized disability, for the term appropriate to each disability respectively, in like manner as in the case of minority on the part of one of several co-tenants. The utmost time, that of seven years, has been allowed *512 to Twining, as though he had been the sole proprietor of the land, and under the disability of absence beyond seas. Before, however, Brown’s possession had reached the term of seven years, to wit: in 1814, a judgment against Twining’s co-tenant (Breen) was revived, the same having been originally recovered in 1789. Under this judgment revived, Breen’s interest was sold, to wit: in 1814, by the sheriff, to Twining and others. The question presented by this state of the facts, is, whether the continuity of Brown’s adverse possession was broken by the lien of the judgment; or whether, in another aspect, one who occupies, can be considered as holding adversely against a judgment; for if the rendition of a judgment strips a possession of its adverse character thenceforth, as against the defendant in judgment, it appears to follow, that possession beginning after a judgment entered, could never have the adverse character.
The case of McRa vs. Smith (Note, 2 Brevard’s Dig., 25) established a rule which has never been disavowed, to wit: that one occupying land, using and claiming it as his own, acquires immunity against action, even by the creditor of the judgment debtor, or the purchaser at. sheriff’s sale under the judgment, after the proper lapse of time. Judge Waties so ruled on circuit, and his judgment was approved, on appeal, by Grimke, Bay, Johnson and Trezevant. The like doctrine had been previously announced in Cholett vs. Hart (2 Bay, 156) as to personalty, and Waties, J., then held, that the A. A., 1712, called the statute of limitations, applied equally to bar actions, notwithstanding the liens of judgments, as to realty and personalty— and that otherwise the great end of the Act, the quieting of possessions, would be defeated. We hold that in view of the declared purpose of the Act of 1712, the complete barring of the action against an adverse occupier, it operates to divest the former true owner of title, and invest the occupier with it. Carrying this consideration along, it will be obvious that the difference is wide between breaking the continuity of adverse possession, by a sale on the part of one occupier of land, or holder of personalty, before he is invested with title, to another; and the *513 devolution of the right to sue, the transmission of the title of the original true owner by operation of law, or by grant. Illustration will be found of this position in our cases of King vs. Smith, Rice, 10; Beadle vs. Hunter & Garrett, 3 Strob., 331; Dillard vs. Philson, 5 Strob., 213. Though strictly, it is true, that a judgment creditor, as such, cannot sue a trespasser on the property of his debtor, nor a purchaser under the judgment until after he has become such, yet, it is equally true (as was said in Cholett vs. Hart) that the first has himself only to blame by voluntary quiescence, with a full protection at command all the time, and the last can buy from the sheriff no more than existed or remained in the judgment debtor, and is as well concluded by the doctrine of caveat emptor, when the judgment debtor has been divested, by transactions in pais, as when the judgment debtor never had any title to the property sold. We are, therefore, of opinion that the judgment of Bel-linger vs. Breen did not affect the possession of the defendants’ grantor.
Another question is, whether the recovery of judgment by certain co-tenants of the plaintiffs, against one John M. Basset, in 1848 operated an estopel against the defendants, on the footing that he was their tenant. Basset said that the ancestor of defendants put him on the land in dispute; that the ancestor died, leaving, as heirs, infants of tender years; that he set up no claim to the land, and that he gave no notice'to the defendants. Of course we are to assume, that the defendants were in possession, or some of them, representing the class who were in equali jure ; arid that a writ of possession turned them out with Basset, so that they re-entered, after a formal ejectment in behalf of Hill and wife, who sued. Under such circumstances it would be very hazardous to hold the defendants bound by the law of estoppel, arising out of a recovery against Basset, when it is manifest that the right and title disputed now, was not in contest then. We maintain the judgment on circuit upon this point, and reason enough for it may be found in the case of Chirac vs. Reineiker, 2 Peters, 613.
*514 The remaining question is, whether the record — copy of a deed from William Brown to James Brown, Sr., was properly excluded. It is said to be an immaterial enquiry, since it related to this point, to wit: whether the occupation of William Brown (the foundation of defendants’ title) was on a spot within the grant to himself, or within the Powell grant, which was older than that adduced for the plaintiffs, and that such question was the pivot of the cause before the jury, and there was no doubt that the deed in question, conveyed land, part and parcel of the Powell grant. The deed offered and rejected was dated in 1811; we cannot say from anything known here and now, that the deed excluded may not serve, to some extent, to show Brown’s adverse possession upon the Powell land, and so in hostility to that title5 instead of the title of the plaintiffs’ ancestor, and therefore we cannot dispose of the question upon the ground of immateriality. It would be agreeable if we could. But that was not the ground of exclusion, and therefore sufficient enquiry was not made upon the subject. It was excluded, because the probate required to admit it to record, did not appear on the registry, nor with the copy from the Register’s office. The question is independent of the Act of 1839, as to recording, by Register of mesne conveyances.
We agree with Chancellor DeSaussure (Hillegas vs. Hartley)(a) that the probate (as the law was before 1839) need not necessarily appear on the deed, or in the registry, in order to make an office copy evidence. It would have been better so, but the question is, whether it could be legally recorded without. In this, as in other cases, it is the presumption of the law, pri-ma facie, rebuttable of course, that every public officer performs his duty, as required by law; as well those inferior as the highest. We have had occasion so to rule, as to the proper affa-davit necessary to precede an attachment issuable by a magistrate : as to due summons by the ordinary, of those required to be brought into his Court, and so on; and the case was a strong one, see Hillegas vs. Hartley, for the renunciation of inherit- *515 anee by feme covert was the question. By the Act of 1731 (3 Stat., 303, sec. 30) “ the record of all deeds, duly proved before a justice of the peace, according to the usual method, and recorded in the Register’s office of this Province, and also the attested copies thereof, shall be received as good evidence,” &c. By that same Act a separate office for registry of deeds was created and located in Charleston. It may well be conceived, that the Act, in ease of the scattered inhabitants, should declare a probate before a justice to be due proof of execution for the right of registry, else the burthen would be great as preliminary to recording. But other modes of probate have been since prescribed. Tide 45 sec. County Court Act, 7 Stat., 232, where probate was to be acknowledgment of grantor, or oath of two credible witnesses in open Court. It is a question of competency of evidence — the want of probate on the record book, or the original, is just matter of observation to the jury — as would any other matter be, calculated to shew fraud. In the case of Monk vs. Jenkins, 2 Hill, Ch. 9, where the question was as to the validity of the emancipation of a negro, and the deed required for that end was required to be lodged within a certain time for record, and probate as much required in that case as in any other, and though the want of probate was urged there, as it is here, yet the Court (per Harper Ch.) presumed not only probate, but that the deed had been lodged in due time. The presumptions sustained in that case, were approved in the case of the State vs. Hill, (per O’Neall, J.,) 2 Speer, 150. Our books are full of cases illustrating the necessity of presuming that all things have been properly done that are required to be done by the ministers of the law; to become the more forcible, when, as in this case, the transaction relates to a period more than forty years ago. It was the existence of the deed at that period, and not its sufficiency for the ends set forth upon its face, that was in view upon the occasion, and if found upon record in a proper registry book of a period corresponding to its date, a copy, the loss of the original being shewn or conceded, ought not to be excluded, merely because a probate does not also appear *516 upon the registry. The objection is, that imposition may be practiced. That would prove too much, for it is manifest that a Register, if he proved faithless to his trust and his oath, if he could descend to collusion, could readily enter on his book a forged probate, and thus secure the fraud. By the 45 sec. of the Act of 1839 (11 Stat., 80) “the proof, in every case, to be recorded with the writing,” is the mandate now in force.
We may remark, that in the present instance, the paper offered and rejected was designed to subserve a purpose merely collateral and subsidary — and the most stringent proof of even an original paper, or the highest grade of evidence, is not, in general, required tor such matter. It may turn out, and we surmise that it will, (since we hear that the original has been found,) to be of no avail in the next trial, how we decide this point, but ex débito justicies, and to avoid the force of an unsafe precedent, we order a new trial upon the last ground considered.
Wardlaw and Glover, JJ., concurred.

(a) 1 Hill, Oh. 106.